# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

| | |
|---|---|
| THERMAN JONES, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL NO. 3:09CV590 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Therman Jones, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner granting his application for Social Security Disability ("DIB") payments based upon an onset date of July 30, 2007, but denying benefits before that date. The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations prior to the determined onset date of July 30, 2007.

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 6) be DENIED; that Defendant's motion for summary judgment (docket no. 9) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on August 16, 2006, claiming disability due to a hip replacement, a bad hip, and arthritis, with an alleged onset date of March 16, 2006. (R. at 66, 76, 79.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 47-51; 57-58.) On September 18, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 20-46.) On February 19, 2009, the ALJ denied Plaintiff's application for the time period prior to July 30, 2007, finding that he was not disabled under the Act during that period, where, based on his age, education, work experience, and residual functional capacity, there are jobs he could have performed which exist in significant numbers in the national economy. (R. at 6-19.) The ALJ granted Plaintiff's application as of July 30, 2007, where, based on his age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that he could perform as of that date. (R. at 18-19.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-4.)

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits prior to July 30, 2007 supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the

ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. at 13.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of degenerative joint disease ("DJD") of the bilateral hips and L4-5 radiculopathy[6], but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 13-15.) The ALJ next determined that prior to July 30, 2007, Plaintiff had the RFC to perform medium work, except that he was limited to pushing and pulling no more than forty to fifty pounds on a consistent basis, and he needed to avoid running, jumping, contact sports, and activities that cause hip flexion more than ninety degrees. (R. at 15-17.) However, beginning on July 30, 2007, the ALJ found that Plaintiff had the RFC to perform only sedentary work. (R. at 17.)

---

[6] Radiculopathy is disease of the nerve roots. Dorland's Illustrated Medical Dictionary 1595 (31st ed. 2007).

The ALJ then determined at step four of the analysis that Plaintiff could not perform his past relevant work as a machine operator/laborer because of the levels of exertion required. (R. at 17.) At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ nevertheless found that prior to July 30, 2007, Medical-Vocational Rule 203.19 directed a finding of "not disabled." (R. at 18.) Accordingly, the ALJ concluded that prior to July 30, 2007, Plaintiff was not disabled and was employable such that he was not entitled to benefits. (R. at 18.) However, beginning on July 30, 2007, the ALJ found that even if Plaintiff had the RFC for the full range of sedentary work, Medical-Vocational Rule 201.10 directed a finding of "disabled." (R. at 18.) Therefore, the ALJ rendered him disabled as of that date. (R. at 18.)

Plaintiff moves for a finding that he is entitled to benefits prior to July 30, 2007 as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of his position, Plaintiff argues that the ALJ erred by determining Plaintiff's onset of disability date without the aid of a medical advisor. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 11-13.) Plaintiff also requests that the Court take judicial notice of a document which apparently states the claim disapproval percentage of ALJs throughout the country, specifically the ALJ assigned to this matter. Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 15-21.)

### A. The ALJ was not required to entertain evidence from a medical advisor before determining Plaintiff's onset date of disability.

Plaintiff argues that the ALJ violated Bailey v. Chater and SSR 83-20, which hold that the ALJ should call on the services of a medical advisor when an onset date of disability can

only be inferred. 68 F.3d 75, 79-80 (4th Cir. 1995). (Pl.'s Mem. at 11-12.) Plaintiff also asserts that the ALJ's conclusion that he was disabled on July 30, 2007, but not disabled before that date, was irrational, and is the "perfect example" of the situation to which Bailey and SSR 83-20 authorities apply. (Pl.'s Mem. at 12.) Defendant argues that there is substantial evidence documenting the progression of Plaintiff's condition, and that such evidence provided a legitimate medical basis for the ALJ's determination of Plaintiff's correct onset date of disability. (Def.'s Mem. at 15-21.)

SSR 83-20 provides that the onset date must have a legitimate medical basis. If the onset date must be inferred, SSR 83-20 states that the ALJ should enlist the services and opinion of a medical advisor. The Fourth Circuit has affirmed the principle in Bailey v. Chater, in which it held that the use of a medical advisor is necessary where the onset date is ambiguous. 68 F.3d at 79. However, the Court also noted that SSR 83-20 does not expressly mandate that an ALJ must consult a medical advisor in every case where the onset of disability is only subject to being inferred. Id. at 79. In Bailey, the Fourth Circuit determined that the ALJ's decision to award benefits as of six months prior to the consultative examinations was, in essence, "wholly arbitary" where it was not supported by substantial evidence. Bailey, 68 F.3d at 80. The Appellate Court found an "absence of clear evidence documenting the progression of Bailey's condition," ruling that the ALJ did not have the discretion to proceed without a medical advisor. Id. at 79.

However, here, in determining Plaintiff's onset date of disability, the ALJ relied on medical evidence which documented the progression of Plaintiff's condition. With regard to Plaintiff's condition regarding his hips, the ALJ noted that treatment records reflected Plaintiff's

8

complaints of hip pain, "left worse than right," and that Plaintiff underwent a left hip arthroplasty in June of 2006. (R. at 16, 200-01.) The ALJ also noted that though Plaintiff had some post-operative complications in July of 2006, by August of 2006 his pain was deemed controlled and described as only mild and "occasional" in nature. (R. at 16, 184-90.) Further, in August of 2006, Plaintiff's treating physician, Dr. Praveer Srivastava, M.D., encouraged Plaintiff to be as active as possible, but he also advised that he could not lift any more than forty to fifty pounds on a consistent and long-term basis, and that he should avoid impact activities such as running, jumping, or contact sports. (R. at 189.) Dr. Srivastava also indicated that Plaintiff's right hip arthritis may affect his activities, but he did not indicate to what extent. (R. at 189.) In October of 2006, Plaintiff and Dr. Srivastava again discussed Plaintiff's work capabilities, and Dr. Srivastava again encouraged him to return to some form of work with restricted hours. (R. at 191.) Dr. Srivastava further advised Plaintiff that he was a "relatively young and functioning individual, who has undergone an apparently fairly successful primary left hip replacement, and that he should make an attempt at returning to a useful and productive lifestyle and work status, with some form of permanent restrictions that are reasonably dictated by his artificial joint." (R. at 191.) Dr. Srivastava also suggested that Plaintiff pursue a rigorous physical therapy and work-hardening program. (R. at 191.) Treatment notes indicate that Plaintiff was allowed to return to work the next day, six hours daily, with the restriction of no lifting or pushing more than forty to fifty pounds, and that Plaintiff agreed with the plan. (R. at 191.) Also in October of 2006, Plaintiff underwent a functional capacity evaluation at John Randolph Medical Center. (R. at 193.) Dr. Srivastava noted that, as a result, Plaintiff's work status would continue as before, with the work restrictions as imposed by his hip. (R. at 193.) Dr. Srivastava also wrote in a

9

November 2, 2006 letter that he agreed with Plaintiff's functional capacity evaluation, in that Plaintiff could not lift, push, or pull more than forty to fifty pounds on a consistent basis; should avoid running, jumping, and contact sports; and should avoid activities which caused the left hip to flex more than ninety degrees. (R. at 195.) On November 30, 2006, Plaintiff was again seen by Dr. Srivastava, who indicated that his work status would continue as previously documented. (R. at 196-97.) Treatment notes from a February 16, 2007 visit with Dr. Srivastava do not indicate that there was any change to Plaintiff's work status, though it was noted that Plaintiff's left hip symptoms appeared to be mild, and that surgical options for the right hip may be appropriate if symptoms were severe and intolerable. (R. at 198-99.) Dr. Srivastava did not indicate that Plaintiff's symptoms were severe or intolerable; nor did he prescribe any medications for pain. (R. at 199.) The ALJ finally noted that any pain Plaintiff experienced was treated with over-the-counter medications. (R. at 16.)

Plaintiff's own function reports and statements corroborate the medical records. Specifically, in October of 2006, seven months after his alleged onset date of disability, Plaintiff reported that he had no problems with personal care; prepared his own meals; washed dishes and clothes; swept the floor; went outside every day; shopped once a week; went to church; and interacted with his siblings on almost a daily basis. (R. at 94-101.) Plaintiff also indicated that Tylenol eased his pain, though it did not stop it completely, and that the medication caused no "side effects." (R. at 102-03.) In June of 2007, Plaintiff indicated that he then experienced pain in his right hip, and that this symptom was a gradual change. (R. at 112.) In September of 2008, Plaintiff's reported daily activities had diminished in that he performed some small chores one to two times a month; his family and friends generally did household chores and prepared his

meals; he still went to church on occasion, but had to move around during the service due to pain; and that he used certain assistive devices for walking and personal care. (R. at 119-23.) Plaintiff confirmed such activities and limitations before the ALJ. (R. at 33-42.)

State agency medical consultant Dr. William Martin, Jr, M.D., also supported the ALJ's finding that Plaintiff was not disabled before July 30, 2007. Dr. Martin opined in October of 2006 that Plaintiff would make a satisfactory recovery before the completion of the requisite twelve month period, which therefore rendered him not disabled. (R. at 166.) Dr. Martin also noted that the opinion of Dr. Srivastava was consistent with his RFC determination and given controlling weight, and was adopted in his assessment. (R. at 166-67.) Dr. Martin further opined that Plaintiff was able to perform a limited amount of medium work. (R. at 161-67.)

After opining on several different occasions that Plaintiff was able to return some form of work, in April of 2007 Dr. Srivastava advised Plaintiff to see Dr. Baljit S. Sidhu, M.D., for an independent medical examination and impairment rating. (R. at 188-89, 191-97, 262-63.) Upon examination on July 30, 2007, Dr. Sidhu noted that Plaintiff's straight leg raise was restricted on both sides; his left hip was able to flex to about eighty degrees; his right hip had only sixty degrees of flexion; Plaintiff's right hip exam was "quite painful"; that though his left hip prosthesis was in satisfactory position, he had moderately severe/advanced DJD of the right hip; and he had severe DJD of the left great toe MP joint. (R. at 262-65.) Dr. Sidhu further concluded that Plaintiff would eventually require a right hip replacement; that his left big toe was stiff and interfered with his walking; and that he could only do a sitting type of job, "light" in capacity. (R. at 265-66.) Thereafter, treatment records from various physicians indicated that Plaintiff reported and experienced elevated levels of pain, and they contained opinions that

11

Plaintiff was unable to work. (R. at 270-72, 274, 281-84, 385-86, 397, 415, 432.) Additionally, Plaintiff's primary care physician, Dr. George C. Coleman, M.D., opined for the first time on November 27, 2007 that Plaintiff was unable to work, due to pain in his legs and hips. (R. at 270.)

Plaintiff has presented no evidence refuting any of the above opinions. Instead, Plaintiff asserts that no one could rationally conclude that Plaintiff was limited to only sedentary work on July 30, 2007, but not beforehand. (Pl.'s Mem. at 12.) Plaintiff argues that "nothing of record transpired in the interval," and that this is the "perfect example" of the situation to which SSR 83-20 applies. (Pl.'s Mem. at 12.) Though Plaintiff relies on the Bailey case to support his argument, his reliance is misplaced. 68 F.3d at 79-80. In Bailey, the record contained no medical evidence between the claimant's alleged onset date of disability and a date two and a half years later, when a consultative examination was performed. Id. at 76-78. In Bailey, the ALJ was unsure as to how long the claimant had been disabled prior to the consultative examination. Id. He therefore granted the claimant "the benefit of any doubt" and found her disabled as of six months before the examination was performed, though there was no actual medical evidence supporting this six month "credit." Id. As noted earlier, the six month "credit" is what the Fourth Circuit found to be a "wholly arbitrary" determination, and the Court held that because there was an absence of clear evidence documenting the progression of the claimant's condition, the chosen onset date had an insufficient medical basis for its support. Id. at 79-80.

Here, the record is replete with medical evidence that is dated between Plaintiff's alleged onset date of disability (March 16, 2006) and July 30, 2007, the date the ALJ found Plaintiff to be disabled. The ALJ did not "arbitrarily" select an onset date; instead, he considered all of the

evidence of record before selecting a date that had a sufficient medical basis. The evidence demonstrates a clear documentation of Plaintiff's medical issues, which the ALJ relied on in concluding that Plaintiff was not disabled prior to July 30, 2007. (R. at 15-17.) The ALJ afforded significant weight to Dr. Srivastava's opinions and incorporated them into his RFC determination. (R. at 16.) The ALJ also afforded significant weight to the state agency medical consultant, Dr. Martin, noting that his opinion was consistent with the objective findings, Plaintiff's admitted activities, and the opinion of Plaintiff's treating physician. (R. at 16.) The ALJ also noted that he afforded greater weight to the opinion of Plaintiff's treating physicians than state agency medical consultants in determining Plaintiff's onset date of disability. (R. at 17.) Though Plaintiff alleges that he has been disabled since March 16, 2006, Plaintiff has presented insufficient evidence supporting this onset date. His own treating physician, Dr. Srivastava, opined on several occasions, and as late as February 16, 2007, that Plaintiff was able to be employed with the restrictions noted earlier. (R. at 189, 191, 193, 195-99.) The first time a physician noted disabling conditions, and actually opined that Plaintiff was unable to work, was July 30, 2007. (R. at 262-66.) Though Plaintiff visited his primary care physician (Dr. Coleman) on a fairly regular basis, Dr. Coleman did not opine that Plaintiff was unable to work until November 27, 2007, eighteen months after his alleged onset date. (R. at 270.) It is notable that the ALJ gave significant weight to these opinions and found that they were consistent with the medical evidence of record. (R. at 16-17.)

Further, Plaintiff's argument that it is irrational to conclude that Plaintiff was disabled on July 30, 2007, but not before, "fails to appreciate how the sequential evaluation process operates." Pugh v. Bowen, 870 F.2d 1271, 1277 (7th Cir. 1989.) Indeed, the same argument

could apply to Plaintiff's alleged onset date of his disability. See Pugh, 870 F.2d at 1277 n.7 ("When one employs the same reasoning with regard to [Plaintiff's] allegation that he became totally disabled upon the day he left his job...one might characterize [his] contention similarly."). Also, SSR 83-20 and Bailey do not require that the ALJ consult a medical advisor in every case where the onset date must be inferred. Rather, the ALJ should consult a medical advisor only where the onset date is ambiguous, or where there is not clear evidence documenting the progression of a claimant's condition. 68 F.3d at 79-80, SSR 83-20. Such is not the case here. As noted earlier, the ALJ relied on clear, substantial evidence documenting Plaintiff's condition. Therefore, the ALJ was not required to consult a medical advisor, and did not violate SSR 83-20 by not doing so. Accordingly, it is the Court's recommendation that the ALJ's decision be affirmed.

**B.      The Court will not take judicial notice of the ALJ's alleged "denial rate."**

Plaintiff asks the Court to take judicial notice of the ALJ's denial rating as stated in an extra-record document. (Pl.'s Mem. at 11.) Plaintiff asserts that the ALJ was biased because of a "misleadingly incomplete account of what happened when he tried to send [Plaintiff] to Dr. Sari Eapen for a consultative exam," and the ALJ's failure to respond to Plaintiff's request to consult a medical advisor. (Pl.'s Mem. at 11, Pl.'s Reply Brief at 3-4.)

The ALJ's alleged denial rating is irrelevant. Even if the ALJ has a high denial rating, that does not necessarily mean there was bias in this particular case. Indeed, Plaintiff has failed to present sufficient evidence demonstrating that the ALJ was biased and unable to render a fair decision in his case. To the contrary, there is sufficient evidence supporting the ALJ's conclusions. It is notable that the ALJ did not disregard any of Plaintiff's treating physician

opinions; instead, he gave them controlling weight and adopted them in his assessments. (R. at 15-17.) Also, Plaintiff's contention that the ALJ demonstrated bias by not responding to his request for a medical advisor is not persuasive. As noted earlier, the ALJ is not required to consult a medical advisor in every case, and he was not required to call on a medical advisor here. Further, Plaintiff's assertion that the ALJ gave a misleading account of what resulted from a request for a consultative examination is also irrelevant. Plaintiff's counsel concedes that he did not want Plaintiff to attend any appointments with Dr. Eapen, the consultative examiner, and Plaintiff has not demonstrated that the ALJ's failure to give a detailed and complete account of what transpired regarding the request resulted in any bias on his part. (Pl.'s Mem. at 8-10.) The Court recommends a finding that such an argument is irrelevant, and does not give rise to a "deep-seated and unequivocal antagonism that would render fair judgment impossible." Liteky v. U.S., 510 U.S. 540, 556 (1994). Accordingly, this Court declines to take judicial notice of such extra-record evidence.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 6) be DENIED; that Defendant's motion for summary judgment (docket no. 9 ) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Richard L. Williams and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and**

**recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                        /s/
                            DENNIS W. DOHNAL
                            UNITED STATES MAGISTRATE JUDGE

Date: April 21, 2010
Richmond, Virginia